# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

————————————————

№ 17-CV-04032

————————————————

ANTONIO SAJVIN,
ON BEHALF OF HIMSELF INDIVIDUALLY, AND
ON BEHALF OF OTHERS SIMILARLY SITUATED,

Plaintiff,

v.

SINGH FARM CORPORATION, AVTAR SINGH,

Defendants.

————————————

**REPORT & RECOMMENDATION**

————————————

**August 13, 2018**

**To the Honorable Ann M. Donnelly,
United States District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff, Antonio Sajvin ("Plaintiff" or "Sajvin"), commenced this instant action against Singh Farm Corporation ("Singh Farm") and Avtar Singh ("Singh") (collectively, "Defendants") on July 6, 2017, seeking overtime compensation under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). *(*Dkt. No. 1 ("Compl.")). Sajvin alleges he is also entitled to statutory damages, liquidated damages, pre-and post-judgment interest, and attorney's fees and costs. 29 U.S.C. § 207 *et seq.*; *see* N.Y. Lab. Law Art. 6, 19; (Compl. ¶ 4). Sajvin served the

Summons and Complaint on Defendants on July 12, 2017. (Dkt. Nos. 9, 10). After Defendants failed to answer, appear, or otherwise defend the action, Sajvin requested a Certificate of Default on September 15, 2017. (Dkt. No. 11). The Clerk of the Court entered Default on September 28, 2017. (Dkt. No. 12). On January 22, 2018, Sajvin filed this motion for default judgment pursuant to Fed. R. Civ. P. 55. (Dkt. No. 16). Your Honor referred the motion to me for a Report and Recommendation. (Order, dated 1/23/2018). For the reasons stated herein, I respectfully recommend that Sajvin's motion be granted and default judgment be entered against defendants for $79,269.18 including attorneys' fees, costs, and pre-judgment interest, plus post-judgment interest.

<h2 style="text-align:center">BACKGROUND[1]</h2>

From May 11, 2016, through August 13, 2017, Defendants employed Sajvin as a produce stocker at Singh Farm. (Compl. ¶¶ 31, 33–34). Sajvin's responsibilities included cleaning and stocking fresh produce, cleaning duties, and receiving deliveries. (Compl. ¶ 31). From May 11, 2016, until about December 2016, Sajvin worked night shifts at Singh Farm six days per week, Wednesday through Monday, from 8:30 p.m. to 8:30 a.m. (Compl. ¶¶ 32, 33). During this period, Plaintiff consistently worked approximately 69.5 to 70 hours per week, with a 20 to 25-minute break each shift. (Compl. ¶ 33). From December 2016, through August 13, 2017, Plaintiff worked Wednesday through Monday from approximately 8:30 p.m. to 7:30 a.m., with a 20 to 25-minute break each shift. (Compl. ¶ 34). During this period, Plaintiff worked approximately 63.5 to 64 hours per week. (Compl. ¶ 34). In addition, approximately three times each week Plaintiff was

---

[1] The following facts are accepted as true. *See e.g., Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 188 (2d Cir. 2015) (noting that a court is required to accept the allegations in a complaint as true in deciding whether default judgment is appropriate).

required to work 30 to 45 minutes after the end of his shift to complete certain cleaning duties, such as mopping the floor. (Compl. ¶ 35).

During Plaintiff's employment, Singh exercised authority to "establish and implement the pay practices and work and scheduling policies at Singh Farm." (Compl. ¶ 20). The Defendants paid Plaintiff a salary of $450 per week in cash. (Compl. ¶¶ 36, 42). During Plaintiff's employment, Defendants did not provide him overtime wages, proper wage statements or wage notices, or compensation for spread of hours. (Compl. ¶¶ 39, 41, 42).

**DISCUSSION**

## I. <u>Legal Standards</u>

Under Rule 55, when a defendant fails to file a timely response to a complaint, the plaintiff must follow "a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the plaintiff must request entry of default by the Clerk of the Court. Fed. R. Civ. P. 55(a). Once default has been entered against the non-responsive party, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

When considering a motion for default judgment, the court accepts all factual allegations in the complaint as admitted, but need not credit the plaintiff's legal conclusion. *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 125 (E.D.N.Y. 2011); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). The court should find for the plaintiff if these factual allegations establish the plaintiff's right to relief "as a matter of law." *Bricklayers & Allied Craftworkers Local 2*, 779 F.3d at 187.

Here, the Defendants were properly served but failed to answer or otherwise respond to the Complaint. Plaintiff satisfied the requirements under Fed. R. Civ. P. 55(b) by requesting entry of default and moving for a default judgment, which the Clerk of the Court granted. (*See* Dkt. Nos.

3

11, 12). Plaintiff seeks an award for $83,301.24, including attorneys' fees, costs, and prejudgment interest. (Pl.'s Mot. at 21).

## II. **Liability**

### A. **Defendants Violated the FLSA**

Sajvin alleges that Defendants violated the FLSA and NYLL by failing to pay him overtime wages. (Compl. ¶ 4). To make a *prima facie* claim that the overtime provisions of the FLSA were violated, Sajvin must adequately allege that (1) he was an "employee," (2) Defendants were "employers," and (3) Sajvin was not properly paid overtime wages as required under the FLSA. *Espinoza v. Indus. Glass & Mirror Inc.*, No. 16-cv-0064 (ARR) (RER), 2016 WL 7650592, at *2 (E.D.N.Y. Nov. 30, 2016), *adopted by*, 2017 WL 65828 (E.D.N.Y. Jan. 5, 2017).

#### 1. Plaintiff is an Employee

Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e). To be "employed" means to "suffer or permit to work." 29 U.S.C. § 203(g). The FLSA defined an "employer" as any person "acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d). Sajvin was employed by Defendant as a produce stocker. (Compl. ¶ 31). Produce stocker is not among the FLSA's list of employee exemptions. *See* 29 U.S.C. § 203. Therefore, Plaintiff adequately alleges that he was an employee covered under the FLSA. *See id.*

#### 2. Singh Farm Corp. is an Employer

The FLSA applies to "employers" that are enterprises engaged in commerce and earn $500,000 or more in "annual gross volume of sales made or business done." *See* 29 U.S.C. §§ 203(s)(1)(A)(i)–(ii); *Jacobs v. New York Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007) (quoting 29 U.S.C. § 207(a)(1)). An enterprise engages in commerce when it has

"employees engaged in commerce or in the production of goods for commerce," or has "employees handling, selling, or otherwise working on goods or material that have been moved in or produced for commerce by any persons." 29 U.S.C. § 203(s)(1)(A)(i). "[I]nterstate commerce involvement may be inferred where supplies used in the business inevitably traveled in interstate commerce," including janitorial and cleaning supplies. *Bosoro v. Am. Comprehensive Healthcare Med. Grp., P.C.*, No. 14-cv-1099 (ENV) (SMG), 2015 WL 5676679, at *4 (E.D.N.Y. Aug. 31, 2015), *adopted by*, 2015 WL 5686481 (E.D.N.Y. Sept. 25, 2015); *see also Rodriguez*, 784 F. Supp. 2d at 121 (E.D.N.Y. 2011) (finding that it is logical to infer "the cleaning supplies utilized by the [p]laintiffs originated outside of New York"). The FLSA covers virtually every enterprise in the nation doing the requisite dollar volume of business. *Jacobs v. New York Foundling Hosp.*, 577 F.3d 93, 99 n.7 (2d Cir. 2009) (internal citation omitted); *Espinoza*, 2016 WL 7650592, at *2 (internal citation omitted).

Singh Farm receives shipments and merchandise from Florida. (Dkt. No. 17 ("Pl.'s Mot.") at 9). This Court infers that the shipments must travel in interstate commerce to move between Florida and Singh Farm. (Compl. ¶¶ 12, 14; Pl.'s Mot. at 6). Plaintiff also uses Pine-Sol and Clorox brand products to complete his cleaning duties, which I infer to have originated from outside of New York. (Pl.'s Mot. at 10). Therefore, I find that Plaintiff has adequately pleaded that Singh Farm is engaged in interstate commerce.

Plaintiff alleges that Singh Farm has continuously had annual gross sales in excess of $500,000. (Compl. ¶¶ 12, 13). This allegation, while somewhat conclusory, is sufficient to meet the pleading requirement under the FLSA. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-cv-3314 (SJ) (RER), 2015 WL 5561033, at *4 (E.D.N.Y. Sept. 1, 2015), *adopted by*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015). Plaintiff has thus established that Singh Farm had annual

gross sales in excess of $500,000, and therefore that Singh Farm is an employer within the meaning of the FLSA.

### 3. Singh is an Employer

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). To determine who qualifies as an employer under the FLSA, courts look at the "economic reality" of the relationship between the parties. *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961). To determine if an employment relationship exists, courts ask, "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Chen v. JP Standard Constr. Corp.*, No. 14-cv-1086 (MKB) (RLM), 2016 WL 2909966, at *5 (E.D.N.Y. Mar. 18, 2016), *adopted by*, 2016 WL 2758272 (E.D.N.Y. May 12, 2016).

Plaintiff's complaint alleges that Singh is the owner and manager of Singh Farm, and that he has, and has exercised, the authority to interview, hire, and fire employees, to set pay rates and oversee work scheduling, and to issue weekly pay to employees like Plaintiff. (Compl. ¶¶ 18-24). Based on these well-pleaded facts, I find that Plaintiff has adequately established that Singh is an "employer" within the meaning of the FLSA.

### 4. Defendants Violated the FLSA by Failing to Pay Overtime Wages

Under the FLSA, employers are required to maintain records of employees' wage and hours, and to pay employees one and one-half of their regular rates for work that exceeds forty hours per week. 29 U.S.C. §§ 207, 216. "[W]hen an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the plaintiff['s] recollection and estimates of hours worked are presumed to be

correct." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 88 (E.D.N.Y. 2012); *Cazarez v. Atlantic Farm & Food Inc.*, No. 15-cv-2666 (CBA) (RML), 2017 WL 3701687, at *3 (E.D.N.Y. May 31, 2017), *adopted by*, 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017) (internal citations and quotations omitted).

Throughout the duration of his employment for Defendants, Plaintiff consistently worked six days per week and between nine and ten hours per day, totaling 63.5 to 70 hours per week, with a 20 to 25-minute break each shift. (Compl. ¶ 33-34). Defendants paid Plaintiff a fixed salary of $450 regardless of the number of hours he worked. (Compl. ¶¶ 36, 39). Plaintiff worked 20 to 30 hours overtime each week, during which he was not paid an overtime premium as required under FLSA Section 207. 29 U.S.C. § 207; (Compl. ¶¶ 33–34). Plaintiff has sufficiently pleaded that Defendants violated the FLSA's overtime requirements.

### B.  Defendants Violated the NYLL

NYLL is the state analogue to the federal FLSA, and mirrors the FLSA's minimum wages and overtime compensation provisions. *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011). However, the NYLL does not require a Plaintiff to demonstrate the employer's minimum amount of gross sales or engagement with interstate commerce. *Id.*; *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. Under the NYLL, employees are entitled to recover all unpaid wages, including overtime, calculated in the same manner as under the FLSA. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; N.Y. Lab. Law § 198.

Similar to the FLSA, the NYLL applies to "employers" and "employees." "Employers" includes "any individual, partnership, association, corporation, limited liability company . . . or any organized group of persons acting as employer[,]" while an "employee" is defined under the NYLL as "any individual employed or permitted to work by an employer in any occupation." *Id.*

7

§§ 651(5)–(6); *Tacuri v. Nithin Constr. Co.*, No. 14-cv-2908 (CBA) (RER), 2015 WL 790060, at *3 (E.D.N.Y. Feb. 24, 2015). Plaintiff has sufficiently alleged that at all relevant times, Defendants were employers and Plaintiff was an employee within the meaning of the NYLL. (Compl. ¶¶ 31–38, 53; Sajvin Decl. ¶¶ 3, 5).

### 1.   Defendants Violated the NYLL's Unpaid Overtime Wage Provision

Under the NYLL, a "legal day's work" is eight hours. N.Y. Lab. Law § 160(3). The NYLL overtime provision mandates that an "employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate . . . ." N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2. The applicable overtime rate applies to each hour worked in excess of forty hours per week. N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2.

Plaintiff sufficiently alleges that he worked more than forty hours each week but was not provided with overtime payment as required under the NYLL. (Compl. ¶¶ 33–36; Sajvin Decl. ¶¶ 13–16). Therefore, Plaintiffs have sufficiently pleaded that Defendants violated the NYLL's overtime provision.

### 2.   Defendants Violated the NYLL's Spread of Hours Pay Provision

The NYLL contains an additional "spread of hours" provision, which states that an employee is entitled to "receive one hour's pay at the basic minimum hourly wage rate" on any day that the interval between the beginning and end of an employee's work day exceeds 10 hours. N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.4, 142-2.18; *Santillan v. Henao*, 822 F. Supp. 2d 284, 293 (E.D.N.Y. 2011). The NYLL also requires employers to maintain employment records for their employees and "authorizes an employee to sue his or her employer to recover unpaid wages otherwise due to him or her under the statute." *Santillan*, 822 F. Supp. 2d at 293; *see also* N.Y. Lab. Law § 663.

Here, Plaintiff regularly worked more than ten hours per day during the time of his employment but was not paid an extra hour of wages for those days as required under the NYLL. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4; (Sajvin Decl. ¶¶ 11–13, 16). Thus, Plaintiff has sufficiently pleaded his entitlement to the spread of hours payment. *See Pavia v. Around The Clock Grocery, Inc.*, No. 03-cv-6465 (ERK), 2005 WL 4655383, at *8 (E.D.N.Y. Nov. 15, 2005).

### C.  <u>Defendants Violated the Wage Theft Protection Act</u>

Section 195 of the New York Wage Theft Protection Act (WTPA) became effective on April 9, 2011, and was further amended on February 27, 2015. *See Guaman v. Krill Contracting, Inc.*, No. 14-cv-4242 (FB) (RER), 2015 WL 3620364, at **8–9 (E.D.N.Y. June 9, 2015). The WTPA mandates that upon hiring of a new employee, all employers must provide the new employee a notice containing information on, *inter alia*, the rate of pay, whether payment is by the hour, shift, day, week, salary, or some other method, and the employer's contact information. N.Y. Lab. Law § 195(1). Along with the presentation of this notice, the employer shall also obtain a signed and dated written acknowledgement of receipt from the employee, presented in the primary language of the employee. *Id.*

The WTPA also requires employers to "furnish each employee with a statement with every payment of wages" that includes: 1) the dates of work covered by that payment of wages; 2) name of employee; 3) name and contact information of employer; 4) rates of wage, including any deductions or allowances. *Id.* § 195(3). Further, where overtime pay is warranted, the statement shall include: 1) the regular hourly rate or rates of pay; 2) the overtime rate or rates of pay; 3) the number of regular hours worked; and 4) the number of overtime hours worked. *Id.*

Defendant hired Plaintiff after the enactment of Section 195, and Plaintiff is therefore protected under its provisions. Defendants did not provide Plaintiff with a pay notice in accordance

with Section 195(1) when Defendants hired him. (Compl. ¶ 43). Furthermore, while working as an employee of Defendants, Plaintiff was paid in cash without a corresponding wage statement. (Compl. ¶ 42). Therefore, I find that the Defendants have violated the WTPA requirements to provide wage notices and wage statements.

### III. Damages

#### A. Scope and Standards of Recovery

Where a plaintiff establishes a violation of FLSA Section 207, the defendant is liable to the plaintiff for: (1) "the amount of their unpaid minimum wage[,]" or (2) the amount of unpaid overtime compensation, and (3) "an additional equal amount as liquidated damages." 29 U.S.C. § 216. Under NYLL, a plaintiff who successfully establishes a "wage claim" should "recover the full amount of any underpayment, all reasonable attorney's fees, [and] prejudgment interest," as well as liquidated damages equal to the wages owed to the employee if the violation was not in good faith. N.Y. Lab. Law § 198(1)(a).

Before a court can award damages on default, it must determine "the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Though the court need not accept the plaintiff's damages allegations as true, a defaulting defendant effectively admits that its conduct proximately cause the plaintiff's damages. *Greyhound,* 973 F. 2d at 159 (*citing Trans World Airlines, Inc., v. Hughes*, 449 F.2d 51, 70 (2d Cir. 1971)).

Federal and state laws both require employers to maintain records of employee wages and hours. 29 U.S.C. § 211; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.6. In the situation of a defaulting employer that cannot produce the necessary employee record, a plaintiff may "establish his damages based on his recollection of his hours worked and wages paid," and the court may

10

give plaintiff "all the reasonable inferences invited by the evidence." *Espinoza*, 2016 WL 7650592, at *4, (E.D.N.Y. Nov. 30, 2016), *adopted by*, 2017 WL 65828 (E.D.N.Y. Jan. 5, 2017).

### B. Damages Calculation

Plaintiff seeks compensation for his unpaid overtime wages, statutory damages, and liquidated damages under both federal and state law, attorneys' fees and costs, and pre and post-judgment interest. (Compl. at 11–12; Pl.'s Mot. at 1). Plaintiff's claim for damages must be established so that this Court may ensure that there is proper basis to enter judgment in the amount demanded. *See Cardoza,* 2015 WL 5561033, at *6. In support of a damage award, Plaintiff submitted a declaration describing the approximate dates of employment, average hours worked each week, wages paid, and a spread sheet of calculations.  (*See generally* Sajvin Decl.).

#### 1. Regular Rate

To determine what compensation is owed, the Court must first calculate Sajvin's regular wage rate. When an "employee is paid a flat sum . . . without regard to the number of hours worked in the day or at the job" the regular rate is determined by dividing the weekly pay by the total hours actually worked. 29 C.F.R. § 778.112; *Espinoza*, 2016 WL 7650592, at *5; *Santillan*, 822 F. Supp. 2d at 295.  Plaintiff was paid on a weekly basis and provides no indication that his weekly pay was intended to compensate him for less than all the hours he worked. (Compl. ¶ 36). Therefore, I will calculate Sajvin's regular rate of pay by dividing the weekly wage by the number of hours he worked each week. *See Santillan,* 822 F. Supp. 2d at 295.

There are two pay periods, the first from May 11, 2016, through December 2016 ("Pay Period 1"), and the second from December 2016, through August 13, 2017 ("Pay Period 2"). (Compl. ¶¶ 33, 34; Sajvin Decl. ¶¶ 11, 12, 13). On average Sajvin worked 71.25 hours during Pay

Period 1 and 65.25 hours during the Pay Period 2.[2] (*Id*.) Sajvin was paid $450 per week regardless of the hours he worked. (Compl. ¶ 36; Sajvin Decl. ¶ 14). Thus, Sajvin's regular rates of pay for Pay Period 1 and Pay Period 2 were $6.32 ($450 / 71.25 hours) and $6.90 ($450 /65.25 hours), respectively.

## 2. Unpaid Minimum Wage

The federal minimum wage does not preempt the state minimum wage, *see* 29 U.S.C. § 218(a), and a plaintiff may recover under whatever statute provides the highest measure of damages. *Jiao v. Shi Ya Chen,* No.03-cv-165 (DF), 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007). "Therefore, the plaintiffs are entitled to recover whichever minimum wage -state or federal- was the highest at any given period of their employment." *See Cardoza*, 2015 WL 5561033, at *8 (internal citation omitted).

Plaintiff was entitled to the following minimum wages under state law: $9.00 from May 11, 2016, to December 31, 2016, and $11.00 from January 1, 2017, to August 13, 2017. *See* N.Y. Lab. Law § 652(1).

Using Sajvin's regular rates as calculated above, Sajvin was paid below the minimum wage for the entirety of his employment.  From May 11, 2016, through December 1, 2016, Sajvin was paid $2.68 per hour less than the minimum wage ($9.00 - $6.32). For this period, he is owed $5,537.55 ($2.68 per hour x 71.25 hours per week x approximately 29 weeks). From December 2, 2016, through December 31, 2016, Sajvin was paid $2.10 per hour less than the minimum wage ($9.00 - $6.90).[3] For this period, he is owed $548.10 ($2.10 per hour x 65.25 hours x approximately

---

[2] Sajvin claims he worked an extra 30-45 minutes three times per week. (Sajvin Decl. ¶ 13). The Court has added an extra 1.5 hours to his weekly hours to account for this.

[3] While the minimum wage did not change until post-December 2016, Sajvin worked fewer hours starting in December 2016.

4 weeks). Finally, from January 1, 2017, through August 13, 2017, Sajvin was paid $4.10 per hour

less than the minimum wage ($11.00 - $6.90).  For this period, he is owed $8,560.80 ($4.10 per

hour x 65.25 hours x approximately 32 weeks). Sajvin is owed a total of $14,646.45 in unpaid

minimum wages under the FLSA and NYLL.

### 3. Unpaid Overtime Compensation

The FLSA requires that employees receive one and one-half times the regular rate for each

hour worked over 40 hours in any given workweek. 29 U.S.C. § 207(a)(1). New York law

incorporates and restates the FLSA requirements, such that the analysis of overtime claims under

state law is generally the same as under the federal law. *See* NY Comp. Codes R. & Regs. Tit. 12,

§ 142-2.2 ("[a]n employer shall pay an employee for overtime at a wage rate of one and one-half

times the employee's regular rate"). Plaintiff has not received overtime compensation for the hours

he worked beyond 40 hours per week. (Compl. ¶ 39; Pl.'s Decl. ¶¶ 13-15).

Sajvin's regular rate was below the minimum wage at all times during his employment,

such that the prevailing minimum wage rates will be used as his regular rate for the purposes of

calculating the overtime compensation that is owed. *See Cardoza,* 2015 WL 5561033, at *10. From

May 11, 2016, through December 1, 2016, Sajvin is entitled to overtime compensation on 31.25

hours per week (71.25 hours – 40 hours). His overtime premium during this period is $4.50 ($9.00

/ 2).[4] Sajvin is entitled to $4,078.13 in overtime compensation for this period (31.25 hours x $4.50

per hour x approximately 29 weeks). From December 2, 2016, through December 31, 2016, Sajvin

is entitled to overtime compensation on 25.25 hours (65.25 hours – 40 hours). His overtime

premium during this period is $4.50 ($9.00 / 2). Sajvin is entitled to $454.50 in overtime

---

[4] Sajvin's proper overtime rate is $13.50 ($9.00 / hour x 1.5), however he is only entitled to $4.50 / hour because he has already been awarded $9.00 on every overtime hour he worked. *See* Discussion *supra,* II.B.2.

13

compensation for this period (25.25 hours x $4.50 per hour x approximately 4 weeks). From January 1, 2017, to August 13, 2017, Sajvin is entitled to overtime compensation on 25.25 hours (65.25 hours – 40 hours). His overtime premium during this period is $5.50 ($11.00 / 2). Sajvin is entitled to $4,444.00 in overtime compensation for this period (25.25 hours x $5.50 per hour x approximately 32 weeks).

### 4. Spread of Hours

The NYLL's spread of hours provision requires employers to pay employees who work more than ten hours in a day for one additional hour at the minimum wage rate. N.Y. Comp. Codes. R. & Regs. tit. 12, § 142-2.4. As discussed above, only employees making minimum wage or less will be awarded such compensation. *See Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 473–74 (E.D.N.Y. 2011).

Sajvin worked between 10.9 and 11.9 hours per day at less than minimum wage and is thus entitled to one hour of spread of hours compensation for every day he worked. For Pay Period 1, Sajvin is entitled to $1,782.00 in spread of hours compensation ($9.00 per hour x 6 days x 33 weeks). For Pay Period 2, Sajvin is entitled to $2,112.00 in spread of hours compensation ($11.00 per hour x 6 days x 32 weeks). In total, Sajvin is entitled to $3,894.00 in spread of hours compensation.

### 5. Wage Theft Protection Act

Sajvin makes two claims under the WTPA. First, that Defendants failed to provide a written wage notice at the time of hiring or on an annual basis. (Compl. ¶ 43; Pl.'s Mot. at 13).  Second, that Defendant failed to provide an accurate wage statement each pay period. (Compl. ¶¶ 42; Pl.'s Mot. at 13).  The WTPA requires employers to provide employees with written wage notices at the time of hiring and on an annual basis. N.Y. Lab. Law § 195(1)(a). This wage notice requirement

went into effect on April 9, 2011, and permits recovery of $50 per workday to a maximum of $5,000.[5] Also since April 9, 2011, the NYLL has required that employers furnish a wage statement every pay period. N.Y. Lab. Law § 195(3). The NYLL permits recovery of $250 per workday to a maximum of $5,000. N. Y. Lab. Law § 198(1-d).[6] Violation of the WTPA entitles employees to statutory damages.

Sajvin was employed well after WTPA's effective date and can receive the statutory maximum for each of the violations. Therefore, Sajvin is entitled to $5,000 in damages for the violations of Section 195(1) and $5,000 for the violations of Section 195(3).

### 6. Liquidated Damages

Sajvin requests liquidated damages under both NYLL and FLSA. Double liquidated damages recovery under the NYLL and FLSA is not permitted. *Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. 2016) (summary disposition); *see also Espinoza,* 2016 WL 7650592, at *6; *Charvac v. M&T Project Managers of New York, Inc.*, No. 12-cv-5637 (CBA) (RER), 2015 WL 5475531, at *6 (E.D.N.Y. June 17, 2015).  Rather, courts are to award liquidated damages that provide for the greater recovery.  N.Y. Lab. Law § 198(1-a). The NYLL provides the greater recovery for Plaintiff because it allows Plaintiff to recover liquidated damages for all claims brought.

An employee is entitled to recover liquidated damages equal to the amount owed for unpaid minimum wage and overtime compensation. *Id.* If the employer shows a good faith basis for believing that its underpayment of wages was in compliance with the law, the court may decide

---

[5] This provision originally permitted $50 per week with a cap of $2,500, but was amended to award $50 per workday with a cap of $5,000 for violations after February 27, 2015. N.Y. Lab. Law § 198(1-b).

[6] This provision originally permitted $100 per week with a cap of $2,500, but was amended to award $250 per workday with a cap of $5,000 for violations after February 27, 2015. N.Y. Lab. Law § 198(1-d).

not to award liquidated damages. *Id.* Since Defendants failed to respond to this motion, no good faith exists and liquidated damages are appropriate. *See Herrera v. Tri-State Kitchen and Bath, Inc.*, No. 14-cv-1695 (ARR) (MDG), 2015 WL 1529653, at *12 (E.D.N.Y. March 31, 2015) (finding defaulting defendants did not show good faith).

NYLL provides liquidated damages equal to "one hundred percent of the total amount of wages found to be due." N.Y. Lab. Law § 198(1-a). Sajvin is therefore entitled to 100% of his damages for the minimum wage ($14,646.45), overtime ($8,976.13), and spread-of-hours ($3,894.00) violations. Sajvin is therefore entitled to $27,516.58 in liquidated damages.

### 7. Interest

Although prejudgment interest may not be awarded in addition to liquidated damages for violations of the FLSA, *Zhang v. Red Mountain Noodle House Inc.*, 15-cv-628 (SJ) (RER), 2016 WL 4124304, at *5 (*citing Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1065 (2d Cir. 1988)), the NYLL allows courts to award a plaintiff prejudgment interest and liquidated damages. N.Y. Lab. Law § 198(1-a); *Espinoza*, 2016 WL 7650592, at *6. New York's prejudgment interest rate is 9% per annum. N.Y. CPLR § 5004.

The Court here has recommended that Sajvin receive damages only under the NYLL. Therefore, he is entitled to prejudgment interest on his actual damages awarded for his claims of unpaid minimum wage, overtime, and spread of hours premium.[7] To determine the date from which to award prejudgment interest, Courts usually select the median date between when the action was filed and the earliest date on which the cause of action existed. *Espinoza*, 2016 WL 7650592, at *6 (collecting cases). Sajvin commenced this action on July 6, 2017, and his earliest

---

[7] Sajvin is not entitled to prejudgment interest on amounts awarded under the Wage Theft Prevention Act. *See* N.Y. Lab. Law §§ 1955(1)-(3); *see also Saucedo v. On the Spot Audio Corp.,* No. 16-cv-00451 (CBA) (CLP), 2016 WL 8376837, at *16 (E.D.N.Y. Dec. 21, 2016).

cause of action existed on May 11, 2016, therefore the midpoint is December 8, 2016. I recommend that Sajvin be entitled to pre-judgment interest on his claim of $27,516.58 at a rate of 9% per annum. This amounts to $6.78 per diem, for a total of $4,162.92 from December 8, 2016, to the date of this Report and Recommendation.

Sajvin is also entitled to post-judgment interest on the Court's award. *See* 28 U.S.C. § 1961 (post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court"). Accordingly, I recommend that Plaintiff be awarded post-judgment interest, to be calculated from the date the Clerk of the Court enters judgment in this action until the date of the payment, at the rate set forth in 28 U.S.C. § 1961.

### 8. Attorneys' Fees & Costs

Sajvin seeks reasonable attorneys' fees and costs, which he is entitled to recover. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). In the Second Circuit, the amount of attorney's fees awarded to a prevailing party is determined by calculating the "presumptively reasonable fee" or what a "reasonable, paying client would be willing to pay." *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. Of Elections*, 522 F.3d 182, 190 (2d Cir. 2008); *E. Sav. Bank, FSB v. Strez*, No. 11-cv-1543 (ENV) (LB), 2013 WL 6834806, at *4 (E.D.N.Y. Dec. 20, 2013). The Court can determine this fee by multiplying the hours reasonably spent on the litigation by a "reasonable hourly rate" based on the "prevailing [hourly rate] in the community . . . where the district court sits." *Arbor Hill*, 522 F.3d at 190. The Court can assess the number of hours billed to determine if they are reasonable. "The number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or unnecessary." *Finkel v. Metro*

*Sign and Maint. Corp.*, No. 09-cv-4416 (SJ) (CLP), 2010 WL 3940448, at *16 (E.D.N.Y. Aug. 12, 2010), *adopted by*, 2010 WL 3927512 (E.D.N.Y. Oct. 5, 2010).

The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and the rates charged. *See generally N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Contemporaneous time records that account for "the date, the hours expended, and the nature of the work done" must accompany requests for attorney's fees. *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co. Inc.*, No. 07-cv-2568 (JG) (SMG), 2012 WL 1414872, at *10 (E.D.N.Y. Jan. 20, 2012) (quoting *Carey*, 711 F.2d at 1148). To determine reasonable hourly rates, courts in this Circuit follow the forum rule set forth in *Simmons*, which instructs the district court to use the prevailing hourly rates in the district where it sits. *See Simmons*, 575 F.3d at 175–76.[8] Courts in this district have awarded, at the high end of the spectrum, $450 for partners, $300 for associates, and $200 for recently graduates. *See Cuevas v. Ruby Enterprises of New York, Inc.,* No. 10-cv-5257 (JS) (WDW), 2013 WL 3057715, at *2 (E.D.N.Y. June 17, 2013) (internal citations omitted).

Sajvin has submitted contemporaneous billing records for his counsels' hours, alongside a declaration from Louis Pechman detailing counsels' qualifications. Plaintiff records hourly rates of $600 for Louis Pechman, $300 for Vivianna Morales, and $225 for Gregory Slotnick. (*See* Dkt. No. 18, Declaration of Louis Pechman, dated Jan 22, 2018, ("Pechman Decl.") ¶¶ 19, 20, 21, 23; *see also* Pl.'s Mot. at 18). Pechman is the founding partner at Pechman Law Group ("PLG"), with

---

[8] This Court recognizes and shares the concerns associated with *Simmons*, that a purely geographic analysis "ignores the practical reality of practicing law in New York [City]." *Gutman v. Klein*, No. 03-cv-1570 (BMC) (RML), 2009 WL 3296072, at *2 (n. 1) (E.D.N.Y. Oct. 13, 2009); *see also Siracuse v. Program for the Dev. of Human Potential*, No. 2012 WL 1624291 (CLP), at *27 (n.28) (E.D.N.Y. Apr. 30, 2012). The invisible and freely permeable border between the Eastern and Southern Districts of New York does not lend itself to geographical segregation of attorneys.

35 years of experience in labor and employment law. (*See* Pechman Decl. ¶ 14). Over the last several years, Pechman has handled over two-hundred and fifty FLSA and NYLL cases. (*Id.* ¶ 16). Pechman has participated in a number of panels and programs with various bar associations on the topic of labor and employment law. (*Id*. ¶ 17). Since 2007, Pechman has been continually selected by his peers for inclusion in the "Best Lawyers in America" and in "New York Super Lawyers." (*Id*. ¶ 18). Since 2017, PLG has been considered a Tier-1 New York City law firm in the area of labor and employment.  (*Id*.). Morales has is a 2013 graduate of St. John's University School of Law, and has been an associate at PLG since her graduation. Morales has been actively involved in over 50 wage and hour cases. (*Id.* ¶ 20). Slotnick is a junior associate and has been working at Pechman Law Group since 2016. (*Id.* ¶ 21).

The passage of time warrants an increase of attorney's fees. With respect to partners such as Pechman, $450 has been the upper limit in this District since at least 2013. *See Cuevas*, 2012 WL 3057715, at *2. The attorneys that practice in this District are entitled to an increase, in part because the same lawyers can bring a similar case 2.0 miles away and receive higher hourly rates.[9] In particular, with Pechman's experience, expertise, and reputation in this District, an award slightly above the current stagnant hourly rate is warranted. Therefore, I respectfully recommend awarding reduced hourly rates as follows: $500 for Pechman, $250 for Morales, and $175 for Slotnick.

In determining a reasonable number of hours, district courts should "exclude excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d

---

[9] Magistrate Judge Pitman in *Manley v. Midan Rest Inc., et al.,* awarded Mr. Pechman an hourly rate of $500. *Manley,* 14-civ-0697, 2017 WL 1155916, at *12 (S.D.N.Y. Mar. 27, 2017).

Cir. 1999). Counsel billed a total of 42.9 hours and the time records show a reasonable amount of time expended on each task. (*See* Dkt. No. 18-3 at 2–5.)

I respectfully recommend that the Sajvin be awarded $9,540.00 in attorneys' fees in accordance with the chart below.

|  | Pechman | Morales | Slotnick |
|---|---|---|---|
| **Hourly Rate** | $500 | $250 | $175 |
| **Hours** | 3.9 | 10.2 | 28.8 |
| **Total** | $1,950 | $2,550 | $5,040 |

In addition to an attorney's hourly rate, "[a]ttorney's fees awards [also] include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Field Day, LLC v. County of Suffolk*, No. 04-cv-2202 (DRH) (ETB), 2010 WL 5491025, at *8 (E.D.N.Y. Sept. 9, 2010). Sajvin seeks an award of costs for $553.10. Sajvin's counsel has submitted an invoice detailing these expenses. (Pechman Decl. at ¶ 26; *see also* Dkt. No. 18-3 at 5). Therefore, I respectfully recommend that the full $533.10 in costs be awarded.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that Plaintiff be awarded damages in the total sum of $79,269.18 plus post-judgment interest, comprised of:

(i) **$14,646.45** in unpaid wages

(ii) **$8,976.13** in unpaid overtime compensation;

(iii) **$3,894.00** in unpaid spread-of-hours premium;

(iv) **$10,000.00** in statutory damages under the NYLL;

(v) **$27,516.58** in liquidated damages under the NYLL;

(vi) **$4,162.92** in pre-judgment interest, plus $6.78 per day to the date of judgment;

(vii) **$9,540.00** in attorney's fees;

(viii) **$533.10** in costs; and

(ix) **Post-judgment interest** as provided in 28 U.S.C. § 1961, to run from the date of judgment until the judgment is satisfied.

Any objection to this Report and Recommendation must be filed with the Clerk of the Court and the Honorable Ann M. Donnelly within fourteen (14) days of receipt of this Report. Failure to file objections within this specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Small v. Sec'y of Health and Human Servs.*, 892 F. 2d 15, 16 (2d Cir. 1989).


*Ramon E. Reyes, Jr.*

RAMON E. REYES, JR.
United States Magistrate Judge
Dated: August 13, 2018
Brooklyn, New York